JUDGE BUCKLO
MAGISTRATE JUDGE COX

RECEIVED
12/15/2021
JH
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

FILED
2/8/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

MIKE JERINIC )
)
)
)
Plaintiff(s), )   Case Number: 1:21-CV-06681
)
v. )
AMAZON )
)
)
)
Defendant(s). )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is MIKE JERINIC of the county of UNITED STATES in the state of ILLINOIS.

3. The defendant is AMAZON-DCH4 FULFILLMENT, whose street address is 401 TERRACE DRIVE,
(city) MUNDELEIN (county) LAKE (state) IL (ZIP) 60060
(Defendant's telephone number) (630)-935-2963

4. The plaintiff sought employment or was employed by the defendant at (street address)
401 TERRACE DRIVE (city) MUNDELEIN
(county) LAKE (state) IL (ZIP code) 60060

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

CAT 3, RANDOM

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

   (a) ☐ was denied employment by the defendant.

   (b) ☐ was hired and is still employed by the defendant.

   (c) ☒ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) 8/30/2020, (day) 8/30/20, (year) _____.

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

   (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☐*has* ☐*has not* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

   (i) ☒ the United States Equal Employment Opportunity Commission, on or about

   (month) 12 (day) 07 (year) 2020.

   (ii) ☐ the Illinois Department of Human Rights, on or about

   (month) _____ (day) _____ (year) _____.

   (b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☒ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

   It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

   (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year)_____

☐ No, did not file Complaint of Employment Discrimination

(b) The plaintiff received a Final Agency Decision on (month) ~~09~~ 09

(day) 15 (year) 2021.

(c) Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ Yes ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☒ Yes ☐ N0, but a copy will be filed within 14 days.

8. *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b) ☐ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month)_____ (day)_____ (year)_____ a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's *[check only those that apply]*:

(a) ☒ Age (Age Discrimination Employment Act).

(b) ☒ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12. The defendant [*check only those that apply*]
 (a) ☐ failed to hire the plaintiff.
 (b) ☒ terminated the plaintiff's employment.
 (c) ☒ failed to promote the plaintiff.
 (d) ☐ failed to reasonably accommodate the plaintiff's religion.
 (e) ☐ failed to reasonably accommodate the plaintiff's disabilities.
 (f) ☐ failed to stop harassment;
 (g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;
 (h) ☐ other (specify): VOICED MY OPINION ON WORKING CONDITIONS

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

13. The facts supporting the plaintiff's claim of discrimination are as follows:

14. *[AGE DISCRIMINATION ONLY]* Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☐ Yes ☒ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

    (a) ☐ Direct the defendant to hire the plaintiff.

    (b) ☒ Direct the defendant to re-employ the plaintiff.

    (c) ☐ Direct the defendant to promote the plaintiff.

    (d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

    (e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

    (f) ☒ Direct the defendant to (specify): APOLOGY LETTER from The Company, FIRED FOR NO REASON At ALL.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

5

**CIVIL COVER SHEET**

...required by law, except

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

_Mike Jerinic_
(Plaintiff's signature)

MIKE JERINIC
(Plaintiff's name)

7018 WEST SUMMERDALE
(Plaintiff's street address)

(City) CHICAGO  (State) IL  (ZIP) 60656

(Plaintiff's telephone number) (773) - 505 - 5665

Date: 12/14/2021

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

6

ILND 44 (Rev. 09/20)

# CIVIL COVER SHEET

The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(See instructions on next page of this form.)*

## I. (a) PLAINTIFFS
MIKE JERINIC

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff
US
*(Except in U.S. plaintiff cases)*

County of Residence of First Listed Defendant
*(In U.S. plaintiff cases only)*
Note: In land condemnation cases, use the location of the tract of land involved.

**(c)** Attorneys *(firm name, address, and telephone number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Check one box, only.)*

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question *(U.S. Government not a party.)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate citizenship of parties in Item III.)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only.)*
*(Check one box, only for plaintiff and one box for defendant.)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Check one box, only.)*

| CONTRACT | TORTS | | PRISONER PETITIONS | LABOR | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 510 Motions to Vacate Sentence | ☒ 710 Fair Labor Standards Act | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 530 General | ☐ 530 General | ☐ 720 Labor/Management Relations | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 535 Death Penalty | | ☐ 400 State Reapportionment |
| | ☐ 320 Assault, Libel & Slander | | | ☐ 740 Railway Labor Act | ☐ 410 Antitrust |
| | ☐ 330 Federal Employers' Liability | | **Habeas Corpus:** | | |
| ☐ 140 Negotiable Instrument | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 540 Mandamus & Other | ☐ 751 Family and Medical Leave Act | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 345 Marine Product Liability | | ☐ 550 Civil Rights | | ☐ 450 Commerce |
| | ☐ 350 Motor Vehicle | | ☐ 555 Prison Condition | ☒ 790 Other Labor Litigation | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 355 Motor Vehicle Product Liability | **PERSONAL PROPERTY** | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 791 Employee Retirement Income Security Act | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loan (Excludes Veterans) | ☐ 360 Other Personal Injury | | | | ☐ 480 Consumer Credit |
| | ☐ 362 Personal Injury - Medical Malpractice | ☐ 370 Other Fraud | | | |
| ☐ 153 Recovery of Veteran's Benefits | | ☐ 371 Truth in Lending | | **PROPERTY RIGHTS** | ☐ 485 Telephone Consumer Protection Act (TCPA) |
| | | | | ☐ 820 Copyright | |
| ☐ 160 Stockholders' Suits | | ☐ 380 Other Personal Property Damage | | ☐ 830 Patent | |
| ☐ 190 Other Contract | | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 840 Trademark | |
| | | | | ☐ 880 Defend Trade Secrets Act of 2016 (DTSA) | ☐ 890 Other Statutory Actions |
| | | | | | ☐ 891 Agricultural Arts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **BANKRUPTCY** | **FORFEITURE/PENALTY** | **SOCIAL SECURITY** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 861 HIA (1395ff) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 423 Withdrawal 28 USC 157 | | ☐ 862 Black Lung (923) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | | ☐ 690 Other | ☐ 863 DIWC/DIWW (405(g)) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations | | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/ Disabilities- Employment | **IMMIGRATION** | | ☐ 864 SSID Title XVI | |
| ☐ 290 All Other Real Property | | ☐ 462 Naturalization Application | | ☐ 865 RSI (405(g)) | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 463 Habeas Corpus – Alien Detainee (Prisoner Petition) | | **FEDERAL TAXES** | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | ☐ 465 Other Immigration Actions | | ☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Check one box, only.)*

☐ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District (specify)  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION ( Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

## VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

## VIII. REQUESTED IN COMPLAINT:
☐ Check if this is a **class action** under Rule 23, F.R.CV.P.

**Demand $**

**CHECK Yes only if demanded in complaint:**
Jury Demand: ☐ Yes ☐ No

## IX. RELATED CASE(S) IF ANY *(See instructions):*  Judge _____  Case Number _____

## X. Is this a previously dismissed or remanded case?  ☐ Yes ☐ No  If yes, Case # _____  Name of Judge _____

Date: _____  Signature of Attorney of Record _____



- FACTUAL BACKGROUND A. Amazon Is an Equal Opportunity Employer and Strictly Prohibits Discrimination In the Workplace. As it relates to these facts, Amazon operates websites that sell various products, including books, electronics, CDs, DVDs, and apparel. Amazon packages and ships these assorted products from warehouses, called Fulfillment Centers, to Delivery Stations, where they are then sent to Amazon's customers. Amazon is an equal opportunity employer, dedicated to ensuring a safe, productive and nondiscriminatory work environment for its employees. See Equal Employment Opportunity Policy Stephanie L. Sweitzer January 6, 2021 Page 2 and Safety Policy, Exhibit A. Accordingly, Amazon forbids all forms of discrimination in the workplace, including on the basis of race.

Amazon is one of the greatest corporations of our time. Unreasonable, unprofessional decisions made by few people in position of power does not represent an image of this company. I was fired for leaving the door open for 5 minutes. It describes everything that I did wrong including that someone could of ben killed by my actions. No where does it say that all other safety steps were in place to prevent anyone entering the trailer. Also, I believe that everyone that works is trained not enter the trailer if green light and several other indicators are not on .

Let me give you just one of many examples that are extremely dangers catgery1 safety violation where people can die. This process was done for a very long time couple times a week. The process requires moving pallets from outside through the very busy section of the dock area into the trailer. Pallets are stacked outside on pallet forklift extremely high 20 feet high. Then pallets are moved through the dock area into the trailer. If the pallets were to fall over it would be disastrous. I have informed multiple managers of this process and the danger of it. Review the video.

B. Amazon's Commitment to Safety and the "Trailer and Dock Release" Process. Amazon is committed to maintaining a safe and healthy workplace for all of its employees. See Portions of Amazon's Owner Manual and Guide to Employment, Exhibit B. Under its polices, all employees are responsible for monitoring and following safety conditions and procedures. To ensure employees adhere to Amazon's safety standards, they must complete a "Safety Standards of Conduct" training module. See Safety Standards of Conduct Module, Exhibit C. The Safety Standards of Conduct outline unsafe behaviors generally and unsafe behaviors related specifically to the Trailer Dock and Release ("TDR") Process. The purpose of the TDR Process is

1

to ensure safe work practices are followed while Amazon employees are performing work on and/or around loading docks, trailers, and/or equipment involved in the receipt and distribution of products, to avoid injuries. And only Amazon employees trained and certified on TDR can perform docking and release functions. Specific to the Charge, the TDR process requires employees to follow identified steps when connecting and releasing trailers from the loading dock, including ensuring all safety devices are engaged before opening the dock door and always completing the TDR checklist to confirm all steps were followed prior to entering the trailer or dock. See August 27, 2020 Trailer Docking and Release Safety Checklist, Exhibit D. The Safety Standards of Conduct outlines potential consequences for failing to follow the steps—serious injury or death. See Exhibit B. And Amazon makes clear to TDR-certified employees that due to the safety sensitive nature of the position and the potentially serious consequences for not following the TDR Process, failure to do so may result in termination of employment.

TDR process was changed from two person to one person responsibility on the dock inside the building. The process to check in the truck remained a two person process did not change. Because of the new policy TDR became a two step process. First step is two people go outside to log the truck into computer system and assign a dock number. The second step is to TDR's the truck from inside of dock area. Because of the new policy dock door is opened multiple times to see if the truck is properly docked. Because of the new policy you really can not determine if truck is properly parked and if truck driver released the trailer from tractor and moved the tractor from the trailer. On any night the dock door is opened and closed 100' of times. The new process was started before August 27, 2020. I am not sure why August 27, 2020 is used. The old process required two people process 100% of entire TDR process. The spotter and the lead. The old TDR process required the truck driver to dock the truck, release the tractor from the trailer, mover the tractor safe distance away from the trailer, only then two people would first go outside inspect the trailer and then go inside and do the TDR process, one as spotter and one primary with two signatures on the form. There was no need to open the door. Check the video compare the two processes.

Safety violations are grouped into Categories 1 through 4, based on the severity of the potential harm that could result from the violation. Id. Category 1 infractions are the most serious because they "create risk of serious injury or loss of life" and, therefore, "termination of employment will likely result following one offense. "Id. An example of a Category 1 violation is "not engaging the dock restraint when a dock restraint exists and is functioning properly." Id. Category 2 infractions "create risk of significant injury to self or others [and] may result in a final written warning following one offense." An example of a Category 2 offense is "opening the dock door before the dock lock is engaged." Id. Category 4 violations are less severe and "include incidents stemming from process and/or standard work failures," such as "failure to correct identifying information (Vehicle Type, Carrier, Trailer Load Securement)." Id.

I have worked 18 months never had any violations. I completed training and received 100% on

2

my test. I believe there were 86 questions. I do not recall one question on Categories grouping. Prior to my promotion in August, I was doing TDR'ing for same pay rate as someone watching the entry door and playing on their phone or IPAD all night. If I have known that you get fired for doing TDR'ing I would of said no thanks. Let me monitor the entry door where the hardest thing to do is not to fall asleep. Unbalanced workload was so unfair that very obvious to see on nay given night. And the pay was the same until recently. Videos and board schedule will show everything. I have continuously questioned the process and suggested my ideas to improve conditions. There are emails and cases opened with HR.

### C. Mr. Jerinic's Employment with Amazon.

On November 10, 2018, Amazon hired Mr. Jerinic as a Seasonal Sortation Associate at Amazon's DCH4 Delivery Station in Mundelein, Illinois and became a regular Sortation Associate in July 2019. On July 19, 2020, Mr. Jerinic was promoted to the position of Yard Marshall, which he held until his termination on August 30, 2020. As a Yard Marshal, Mr. Jerinic oversaw the arrival and placement of trailers and delivery vehicles at DCH4. See Yard Marshal Job Description, Exhibit E. A core responsibility of a Yard Marshall is to "perform Trailer Dock Release (TDR) and comply with safety standards and processes." Id. Mr. Jerinic completed the Safety Standards of Conduct Training on July 3, 2020, and thereafter was

Stephanie L. Sweitzer January 6, 2021 Page 3

certified to perform the TDR process. See Jerinic Acknowledgment of Safety Standards of Conduct, Exhibit F. On August 27, 2020, Mr. Jerinic committed multiple infractions of the TDR Guidelines. When a truck with an attached trailer arrived at the dock where Mr. Jerinic was working, he opened the dock door without first engaging the lock to the trailer and attaching the trailer to the dock— Category 1 and Category 2 safety violations. After opening the door, Mr. Jerinic walked away, leaving the dock door open for five minutes, and did not engage the lock until he returned. Additionally, Mr. Jerinic completed only one section of the TDR safety checklist—yet another violation, this time a Category 4 safety violation. See Exhibit D.

I opened the dock door to see where the truck was. With the new process this is done on every truck that arrives multiple times by everyone. Check the video. I did forget to pull the dock door down. The red sign displaying do enter the trailer was displayed. The red light to indicate that is not safe to enter the truck was on because I did not engage the lock. The dock plate was not lowered. The green checklist sheet was not displayed. Even though the door was not closed, all these signs not to enter the truck were displayed. Like I said I did not close the door. I did not just leave, the video will show that I was doing other work and I was in the dock area.

We were in process of learning the new software. We work in teams. That night all the trucks

3

were running late. Because of the training the green checklist sheet was slow to print. Allen tolled that he would fill out the entire sheet for dock 2 when he was able print. When he gave me the sheet I just looked the top portion and did not look at the entire sheet. Earlier same thing happened for dock #4. Because of computer problems and pressed for time Allen filled the entire sheet and I TDR the truck. Video will show that dock 4 sheet was filled by Allen. Because trailer in dock #2 was the last truck for the night. Trailer was used to load the empty carts into the trailer. Generally the same sheet is used for the carts. That's way it was not noticed sooner. The same process that was used on dock door 4 was used on 2. I accept my mistake but to fire me and overlook every other issue starting with policy is not fair.

In any job mistakes are made. And I have made many mistakes. I did not know that leaving the door open is category 1 violation. There were two other people that were with me and saw the door open. Part are of the training if you see an immediate danger try to resolve it immediately.

During Amazon's daily TDR audit1 , a Workplace Health and Safety Specialist ("WHSS") discovered the incomplete TDR safety checklist and investigated the issue. During his investigation, the WHSS witnessed Mr. Jerinic's Category 1 and other safety violations through a review of video footage from surveillance cameras at the facility. When management met with Mr. Jerinic to discuss the violations and their seriousness, he admitted to the conduct resulting in the violations, and attempted to excuse his conduct by pointing to the busyness of the day. Amazon revoked Mr. Jerinic's TDR certification and informed him an investigation into the violations was underway. Amazon's investigation substantiated that Mr. Jerinic committed a Category 1 safety violation and, therefore, Amazon terminated his employment on August 30, 2020 in accordance with its Safety Standards of Conduct. See August 2020 Investigation Report, Exhibit G. On or around September 2, 2020, Mr. Jerinic contacted Amazon's Ethics Hotline to file a complaint, alleging unfair employment practices in connection with his termination. Amazon promptly investigated his complaint. See September 2020 Investigation Report, Exhibit H. As part of the investigation, Amazon interviewed Mr. Jerinic a second time. During the interview, he again admitted to the conduct and acknowledged his TDR safety violations could have led to someone getting hurt, but expressed his opinion that he should have received a warning before Amazon terminated his employment. The investigation substantiated the conduct for which Mr. Jerinic was terminated and that the termination (without first a final written warning) was appropriate due to the Category 1 safety violation.

The management was there but did not say much no HR person. The WHSS questioned me the

4

entire time. I thought I was on murder trail. There were two WHSS individuals' one male and female. I have never seen the female before at the facility. Maybe she is a new WHSS employee. I did not attempt to excuse myself from the mistake. I was very disappointed. It was a busy night just like every night for some people. Statements are trying to make me look like a very sloppy reckless individual. But, my record of 18 months speak for it self.

- MR. JERINIC'S ALLEGATIONS ARE MERITLESS.

  - Mr. Jerinic Cannot Establish Amazon Discriminated Against Him On The Basis of His Race When It Terminated His Employment.

The scant allegations in the Charge fall far short of the evidentiary burden required to establish a case of reverse discrimination. To establish a prima facie case of race discrimination under Title VII, a complainant typically must show: (1) he was a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably. See Good 1 WHSS employees conduct daily TDR audits to ensure the authorized TDR associates follow the Safety Standards of Conduct. This involves reviewing TDR safety checklists, checking all of the dock doors and utilizing a TDR Mobile Application on a Kindle Device to conduct the audit. If the audit identifies a TDR miss, then the WHSS investigates the same and provides Human Resources with guidance and information about the miss on that same day. Human Resources and senior management then engage with the associate involved in the miss to understand why it occurred and to determine any corrective action

Stephanie L. Sweitzer January 6, 2021 Page 4

v. Univ. of Chicago Med. Ctr., 673 F.3d 670, 679 (7th Cir. 2012), overruled on other grounds by Ortiz v. Werner Enterprises, Inc., 834 F.3d 760 (7th Cir. 2016). However, because Mr. Jerinic is white and is therefore alleging reverse discrimination, courts apply a modified prima facie test. In cases of "reverse discrimination," where members of majority groups, such as whites, believe they were subject to employment discrimination, the first prong of the prima facie case (i.e. "member of a protected class") cannot be used. Id. Instead, a plaintiff satisfies the first prong by demonstrating "background circumstances sufficient to demonstrate that the particular employer has 'reason or inclination to discriminate invidiously against whites' or evidence that

5

'there is something 'fishy' about the facts at hand." Id. Courts employ a more stringent prima facie test because discrimination against whites is a "less common phenomenon" and therefore, the nonminority plaintiff must present evidence to show why it is likely the employer engaged in such unusual behavior. Mills v. Health Care Serv. Corp., 171 F. 3d 450, 457 (7th Cir. 1999). If an employee establishes a prima facie case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." Antonetti v. Abbott Labs., No. 07 C 0768, 2008 WL 548763, at *4 (N.D. Ill. Feb. 22, 2008), aff'd, 563 F.3d 587 (7th Cir. 2009) The Charge offers no facts supporting that any "background circumstances" exist at Amazon which would evidence discriminatory animus toward white employees. Nor does the Charge even hint at why Mr. Jerinic believes Amazon's actions to be discriminatory, other than his unsupported, conclusory assertion that non-white employees were disciplined less harshly. This is insufficient to sustain a claim for reverse discrimination. See Good, 673 F.3d at 679 (finding plaintiff's argument defendant disciplined minority employees less harshly than plaintiff failed to establish the employer had an "anti-white bias or a history of discrimination against white people" and did not satisfy the first prong). Specifically, Mr. Jerinic fails to identify which similarly situated white employees he believes committed Category 1 safety violations but were not terminated, as he must to sustain such a claim. See, e.g., Antonetti, 2008 WL 548763 at *4 ("[W]hen dealing with disparate disciplinary standards, the plaintiff must normally establish that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.") (internal citations omitted). The Charge fails to provide any information about the employees to whom Mr. Jerinic refers, let alone information regarding their supervisors, alleged conduct or possible mitigating or differentiating factors. Amazon applies its safety policies and procedures equally to employees of all races, and the incident involving Mr. Jerinic was no exception. Because Mr. Jerinic has not identified any non-white employees who were treated differently or proffered any evidence of discriminatory animus toward white employees, he cannot establish a prima facie case of reverse discrimination and the Charge should be dismissed. And even if Mr. Jerinic could carry his burden of proving a prima facie case (which he cannot) he still would fail to rebut the legitimate, nondiscriminatory reasons for his termination—his undisputed Category 1 safety violation. Holloway v. Soo Line R.R. Co., No. 16 CV 9191, 2018 WL 488259, at *14 (N.D. Ill. Jan. 19, 2018), aff'd, 916 F.3d 641 (7th Cir. 2019) (finding violation of company policy was legitimate reason for termination even where proposed comparator allegedly committed same violation because plaintiff failed to offer evidence "the employer took that adverse action on account of [his] protected class, not for any non-invidious reason") (citations omitted).

Stephanie L. Sweitzer January 6, 2021 Page 5

III. CONCLUSION As demonstrated above, Mr. Jerinic's claim is meritless and fails as a matter of law. Thus, Amazon respectfully requests the Charge be dismissed in its entirety. Sincerely, /s/

Stephanie L. Sweitzer Stephanie L. Sweitzer SS Enclosures

My claims may not be explained correctly from a legal perspective but they are based on facts. When does an employee not get fired for category 1 violation? The statement above says that employee will likely be fired. In my situation there were other multiple steps in place to prevent anyone from entering the trailer.

I can give many examples of safety violations. That no action was taken and went unnoticed. On 8/28/2000 around 8-9:30pm. Review the video on dock 4. You will see a clearly several violation of TDR'ing. This is tractor attached to a trailer. I was near the dock door and informed another employee that there is a safety issue. Should I have ignored the problem and let someone possible get injured. Watch what the employee does after he is informed of the problem. He thanks the person that tolled him about the problem. Not knowing it was me that noticed. This is just one example of me trying to have a safe environment.

The same person is moving a pallet with heavy boxes and tips over the pallet over near crowded area. Again went unnoticed. There are many more, however I did not go there to watch what other people do.

On the same day you will see two people enter the truck to unload. Clear rules violation because of COVID-19 there should be only 1. And that's a manger doing it. This was done to get the packages unloaded faster.

I believe sometime in July -August young lady collapsed in one of the lanes on the A side row 30. Please review the action. I believe changes were made after the incident.

I worked in extreme conditions before air conditioning and heat were installed. Was this a category 1 violation heat index over 120. And you are moving same number of packages as it was normal conditions. Videos will show all.

My job description says that my core responsibility was yard Marshall. That is 100% wrong. My job was 95% unloading and gap-unload. For some it was 100% yard Marshall. Question is why. Videos will show who was doing what and who was doing nothing. To say that my job was Yard Marshall is a disgrace. Ask the people I worked with and the answer will be clear.

I was denied schedule change several times. I was one of the oldest and longest working employees there. HR has emails request.

When there was an opportunity for full time. I was tolled by a Manger that everyone will get a full time position but me. Why

I was not offered yard marshal position at the same time as others. I had to apply at other site. I have sent emails and talked to manger. He had no answers. My training started 2 weeks later

7

then everyone else.

My firing was shameful and unjustified. My firing is not based on my job performance. It's based on retaliation, discrimination and on policy that empowers certain people to overstep their powers. Again please review 18 months of my work. Review my concerns to HR about inequality and unfair workload. Review what benefits employees had when I started and what new hires have now on day 1. Was it because Amazon is much more generous now then 18 months ago. Look at the people that were fired and people that were not fired. I could go on but in we all make mistakes and learn from them. To intentionally cause harm to another human being for any reason is wrong.

I am still being denied jobs at Amazon. Please check application history. I tried to request my HR file but have not received one.

Illinois Department

P.O. Box 19509
Springfield, IL 62794
Phone: (800) 244-5631    TTY: (800) 244-5631
Fax: (217) 557-4913
www.ides.illinois.gov
4320-0394

MDES2021 0001592701

MIKE JERINIC
7018 W SUMMERDALE
CHICAGO, IL 60656

## Determination

Date Mailed: 03/04/2021
Claimant ID: 2450450

Based on the determination regarding your claim, you are eligible for benefits as long as you meet the eligibility requirements for unemployment insurance for each week.

Please read each determination carefully, as it may include benefit reductions.

Issue 001 602A - Misconduct
Allw. Effective 09/06/2020 - 12/31/9999

Was the claimant discharged for misconduct connected with the work? The evidence shows the claimant was discharged from AMAZON.COM SERVICES LLC because of the violation of a safety policy. Since the claimant's action, which resulted in his discharge, was not repeated by the individual following warnings or explicit instructions, the claimant is not ineligible for benefits from 09/06/2020 (D) with regard to this issue.

**FOR INFORMATION REGARDING YOUR RIGHTS UNDER ILLINOIS' UNEMPLOYMENT INSURANCE ACT AND/OR THE EXACT LANGUAGE OF THE ACT AND IDES RULES, PLEASE VISIT THE AGENCY'S WEBSITE AT www.ides.illinois.gov/UIrights.
FOR INFORMATION ON HOW TO OBTAIN FREE LEGAL SERVICES, SEE THE INFORMATION LISTED BELOW.**

If you require further details concerning the information in this letter, please contact the Agency at the phone number listed above.

Please see appeal rights listed below and additional information regarding this determination.

EEOC Form 161 (11/2020)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **Mike Jerinic**
7018 W. Summerdale
Chicago, IL 60656

From: **Chicago District Office**
230 S. Dearborn
**Suite 1866**
Chicago, IL 60604

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2020-06750 | **Shuwn Hayes,** Investigator | (312) 872-9733 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/eh*   9/15/2021

Enclosures(s)   **Julianne Bowman,**   *(Date Issued)*
**District Director**

cc: **AMAZON - DCH4 FULFILLMENT CENTER**
**C/O STEPHANIE L. SWEITZER**
**MORGAN, LEWIS & BOCKIUS**
**77 W. WACKER DRIVE**
**FL 5**
**CHICAGO, IL 60601**

Jenkin v. Amazon, EEOC Charge No. 440-2020-06790

From: Sweitzer, Stephanie [stephanie.sweitzer@morganlewis.com]
To: pkime@ameritech.net
Date: Thursday, April 15, 2021, 03:25 PM CDT

Mr. Jenkin,

I write in connection with the Charge you have pending before the Equal Employment Opportunity Commission (EEOC), Charge No. 440-2020-06790. You previously contacted me to express your interest in resolving the Charge. To confirm my understanding based on your prior correspondence, you are not represented by an attorney in connection with this EEOC Charge. I also understand that you have withdrawn from the class action lawsuit pending before the U.S. District Court for the Northern District of Illinois, Case No. 1:20-cv-06485, and are no longer represented by any attorney in connection with that lawsuit. If that is incorrect, please let me know and we will contact you only through your attorney.

Amazon has authorized me to communicate an offer of $1,000.00, less applicable withholdings and deductions, to resolve your EEOC Charge. This offer is contingent on you signing the attached Confidential Settlement Agreement and General Release, which releases your claims against Amazon. It also is contingent on you withdrawing the EEOC Charge.

You have 21 days—until May 6, 2021—to consider this offer and Agreement. If you do not sign the Agreement by May 6, 2021, the offer will be withdrawn. On behalf of Amazon, I advise you to consult with an attorney in connection with this Agreement. If you choose to sign the Agreement, you will have 7 days from the date you sign to revoke it. You can revoke the Agreement by contacting me.

If you choose to sign the Agreement, please return it to my attention via email or fax – (312) 324-1001. To process the settlement payment, Amazon also will need you to provide the following bank account information for the electronic funds transfer:

    Name on Account:

    Bank Name:

    Account Type:

    Routing Number:

    Account Number:

Thank you,

Stephanie L. Sweitzer
Morgan, Lewis & Bockius LLP